UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| M.L.R., a minor, by his mother <br> MIKIYA S. BRANNON, <br> <br> Plaintiff, <br> <br> vs. <br> <br> CAROLYN W. COLVIN, Acting <br> Commissioner of the Social Security <br> Administration, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Cause No. 1:15-cv-447-WTL-TAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ENTRY ON JUDICIAL REVIEW

Mikiya S. Brannon (the "Plaintiff"), on behalf of her minor child, M.L.R. (the "Claimant"), requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying the Claimant's application for Supplemental Security Income ("SSI") benefits for a childhood disability under the Supplemental Security Income Act ("the Act"). 42 U.S.C. § 1382(c)(3)(C). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I.      PROCEDURAL HISTORY

The Claimant, through his mother, protectively filed a claim for SSI benefits on October 1, 2012, alleging disability due to attention deficit-hyperactivity disorder ("ADHD") commencing September 1, 2012, when the Claimant was six years old. His application was denied initially on December 7, 2012, and again upon reconsideration on February 27, 2013. Following the denial upon reconsideration, the Plaintiff requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A video hearing was held before ALJ William M. Manico on October 29, 2013, during which Brannon appeared on the Claimant's behalf and was

represented by counsel. The ALJ issued his decision on November 15, 2013, denying the Plaintiff's claim. The Plaintiff requested review by the Appeals Council, and the Appeals Council affirmed the ALJ's decision on January 26, 2015. After the Appeals Council affirmed the ALJ's decision, the Plaintiff timely filed his complaint for judicial review in this Court.

## II.    APPLICABLE STANDARD

To be eligible for SSI, a claimant must meet the requirements of 42 U.S.C. § 423. Pursuant to that statute, "disability" means "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). The standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *See Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).

In determining whether a claimant under the age of eighteen is disabled, the Commissioner employs a three-step sequential analysis. 20 C.F.R. § 416.924(a). At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition. 20 C.F.R. § 416.924(b). At step two, if the claimant does not have a "severe" impairment or a combination of impairments that is "severe," he is not disabled. 20 C.F.R. § 416.924(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals any impairment that appears in the Listing of Impairments, codified at 20 C.F.R. pt. 404, subpt. P, App. 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings, and meets the twelve-month duration requirement, the claimant is deemed disabled. 20 C.F.R. § 416.906.

If the claimant has a severe impairment that does not meet or medically equal any listing, the ALJ next examines whether the impairment "functionally equals the listings." 20 C.F.R. § 416.926a(a). In determining whether an impairment functionally equals the listings, the ALJ must examine the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The claimant's impairment or combination of impairments must result in "marked" limitations in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.924a(e)(3)(i).

### III.  THE ALJ'S DECISION

The ALJ determined at step one that the Claimant had not engaged in substantial gainful activity since October 1, 2012, the application date. R. at 15. At step two, the ALJ concluded that the Claimant had the severe impairment of ADHD. *Id.* At step three, the ALJ determined that the Claimant's impairments did not meet or medically equal a listed impairment, stating that "there is little evidence the [C]laimant has marked difficulties with attention, impulsiveness, or hyperactivity." *Id.* The ALJ also determined that the Claimant's impairment did not functionally equal a listing. The ALJ examined each of the six domains and determined that the Claimant had "less than marked limitation" in the following three domains: acquiring and using information; attending and completing tasks; and interacting and relating with others. R. at 19-

3

21. He also determined that the Claimant had "no limitation" in the other three domains. R. at 22-23. Accordingly, the ALJ concluded that the Claimant was not disabled as defined by the Act.

## IV.     EVIDENCE OF RECORD

The ALJ's decision in combination with the Plaintiff's brief (Dkt. No. 18) aptly set forth the medical evidence of record, which need not be recited here. Specific facts are introduced in the discussion section below where relevant.

## V.     DISCUSSION

In her brief in support of her Complaint, the Plaintiff challenges the ALJ's determination at step three. She argues that the ALJ did not base his decision on substantial evidence because he relied on his lay opinion, ignored or rejected evidence, performed a perfunctory analysis in making his determination, and improperly relied on the opinions of the agency's reviewing physicians in determining that the Claimant's impairments did not equal a listing because the physicians did not consider all of the evidence in the record in forming their opinions.[1]

### A.     Meet or Medically Equal a Listing

The Plaintiff generally contends that the ALJ's determination regarding whether the Claimant's impairment met or medically equaled a listing is perfunctory and that the ALJ "ignored or rejected evidence proving the Listing [112.11 for attention deficit-hyperactivity disorder], such as the report answering the Vanderbilt questionnaire by the [C]laimant's mother [] which proved all of these elements." Dkt. No. 18 at 10-11. The ALJ correctly explained that

---

[1] The Plaintiff also mentions that the ALJ's decision "must be reversed because it fails to build an accurate and logical bridge from all of the evidence in the record to his conclusions" (Dkt. No. 18 at 12), but she does not develop this argument. Therefore, this argument is not addressed.

4

"the [C]laimant must show medically documented findings showing marked attention, impulsiveness, and hyperactivity," R. at 15, and "must demonstrate at least two of the appropriate age-group criteria in paragraph B2 of listing 112.02," *id.* "[The Claimant] has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The Plaintiff does not meet this burden. As the Commissioner points out, the Vanderbilt questionnaire "was filled out by [the] Plaintiff, not by a medical professional, and [the] Plaintiff did not explain how it could have established medically documented marked inattention, impulsiveness, or hyperactivity." Dkt. No. 23 at 9 fn.3. Furthermore, the Plaintiff does not direct the Court to any other evidence that might have shown that the Claimant's impairment met or medically equaled a listing, and importantly, the ALJ provided a detailed review of the Claimant's evidence elsewhere in his decision, *see* R. at 16-18, including in the context of his analysis under the functional equivalency test, *see id.* at 18-23. Accordingly, the ALJ supported his findings with substantial evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole, and [] it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five") (citing *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985)).

The Plaintiff also contends that the ALJ made a determination regarding medical equivalency based on his lay opinion, Dkt. No. 18 at 14, and "simply assumed [] that the [C]laimant's combined impairments did not medically equal any Listing," *id.* at 15. Though not found in the ALJ's paragraph discussing medical equivalency, the ALJ gave "great weight" to the agency physicians' opinions "because [they] are familiar with the Social Security Administration disability determination guidelines. . . . Further, the opinions are consistent with

5

the medical evidence of record, such as the results of the impartial consultative examination," R. at 17-18, and both agency physicians found that the Claimant's impairments did not meet or medically equal a listing, *see* R. at 50 & 59, respectively.[2] Furthermore, the Plaintiff again does not direct the Court to any evidence that might demonstrate that the Claimant's impairment medically equaled a listing. The ALJ did not rely on his lay opinion, but based his opinion on substantial evidence.

### B.     Functionally Equal a Listing

As noted above, to determine whether the Claimant's condition is the functional equivalent of a listed impairment, the ALJ evaluated the six domains and found that the evidence did not show that the [C]laimant had a "marked" limitation in any two of these domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The ALJ found no impairment that met these levels of interference with the Claimant's ability to function.

The Plaintiff challenges the ALJ's conclusions as to the severity of the Claimant's impairment in three domains: acquiring and using information; attending and completing tasks;

---

[2] The Plaintiff also argues that the ALJ erred in analyzing whether the Claimant's impairments met or equaled a listing because the reviewing physicians did not consider additional medical evidence submitted after the physicians' evaluations were completed. The Plaintiff contends that the ALJ could not reasonably rely on the December 2012 and February 2013 reviewing physicians' opinions that the Claimant's condition did not meet or medically or functionally equal a listing because the physicians did not consider all of the evidence in the record, as their opinions pre-dated medical records from March through September 2013.

The Plaintiff points to the Vanderbilt questionnaire in the March-September 2013 records as evidence establishing disability. Dkt. No. 18 at 11 (citing R. at 244-45). Again, this questionnaire was completed by the Claimant's mother, not a medical professional. *See* R. 244-45. It, therefore, does not serve the purpose attributed to it by the Plaintiff, and the Plaintiff has not pointed to, in the March-September 2013 records or otherwise, new medical evidence or opinion that would contradict the earlier agency physicians' opinions. Thus, the ALJ's reliance on the earlier agency physicians' opinions is not misplaced, and no further review of the records was required. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (unnecessary for ALJ to articulate reasons for accepting agency physicians' determinations where there was no other evidence addressing medical equivalency).

and interacting and relating with others. Dkt. No. 18 at 11. Generally, the Plaintiff contends that "[t]he ALJ erroneously rejected the teacher and physicians' functional findings simply because they were contrary to the ALJ's unqualified medical opinion." *Id.* at 11-12. Specifically, the Plaintiff argues that, in reaching a determination regarding the Claimant's ability to acquire and use information, the ALJ disregarded evidence that the Claimant repeated first grade. This, however, is contradicted by the ALJ's express mention of this fact in his determination. Although the ALJ does not raise the issue in the discussion under the heading "Acquiring and Using Information," he expressly stated that he "disagrees with the medical consultants in the evaluation of the first domain, acquiring and using information" and states that "[t]he [C]laimant's evaluation of a less than marked limitation in this decision is based upon the mother's testimony of [the Claimant] being held back after first grade." R. at 18.

With respect to the domain "attending and completing tasks," the Plaintiff argues that the ALJ's determination "rejected the evidence that [the Claimant] required constant re-focusing, had a difficult time following instructions and required constant prompts by the consultative psychologist to stay in his seat." R. at 11. Contrary to the Plaintiff's assertion, the ALJ does not reject these facts; rather, he discusses each of them in reaching his determination that the Claimant has a less than marked limitation in this domain.[3] *See* R. at 20. Instead of limiting his analysis to these facts alone, however, the ALJ also specifically refers to additional evidence showing that the Claimant could step away, calm down, and re-apply himself; complete

---

[3] At other points in the record, the ALJ also refers to these and other facts that involve attending and completing tasks. *See, e.g.*, R. at 16 (referring to mother's testimony and reports regarding the Claimant's inability to focus, difficulty sticking to tasks, and frequent need for redirection); *id.* at 17 (discussing doctor noting that the Claimant was hyperactive in the examination room and displayed traits consistent with impairment and the Claimant's observed restless motor behavior and need to be "prompted constantly to stay in his seat").

7

household chores with minimal supervision; and put in a good effort and be attentive to required tasks. *Id.* The ALJ also noted that the Claimant's grandmother stated that the Claimant's ability to stay focused on tasks was age appropriate. *Id.* Based on all of this information, the ALJ summarized that "the record supports some degree of difficulty in this domain," but concluded that "the [C]laimant has a less than marked limitation in attending and completing tasks." *Id.*

The Plaintiff also contends that, in determining that the Claimant had a less than marked limitation in interacting and relating with others, the ALJ "ignored and rejected the evidence that the [C]laimant was quite violent, was twice suspended for attacking other children, and that he would throw chairs at other children and at his teacher." R. at 11. Although the ALJ does not expressly mention the Claimant's suspensions or throwing chairs, the ALJ neither ignored nor rejected evidence of violent or angry behavior. The ALJ refers to evidence that the Claimant's mother stated that the Claimant has significant anger issues, resulting in fights at school and has difficulty playing team sports as a result of his anger issues. R. at 16. He also discusses evidence from the Claimant's teacher about "an incident where the Claimant pushed another student to the ground while waiting in line." *See* R. at 21 (citing R. at 239). The ALJ goes further, acknowledging that such behavior "shows some difficulty functioning in this domain." R. at 21. The ALJ, however, considered and cited additional evidence that the Claimant was cooperative; had friends with whom he played video games, football and basketball; and got along very well with other children and adults, according to the Claimant's grandmother. *Id.* (citing R. 152, 153, and 223); *see also* R. at 16-17 (discussing evidence that the Claimant communicated effectively, was able to make friends his own age, and got along with adults). The evidence the ALJ considered led him to conclude that "[w]hile the record supports some

8

degree of difficulty in this domain, the undersigned finds the [C]laimant has a less than marked limitation in interacting and relating with others." R. at 21.

In each instance described, the ALJ considered whether the evidence showed that the Plaintiff had a marked limitation in a particular domain. From there, he determined that the Plaintiff's condition was not the functional equivalent of one of the listings. The ALJ's functional equivalency conclusions are supported by substantial evidence, and there is no basis to reverse the ALJ's determination on that issue. Moreover, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate reasons for his decision, and the decision is supported by substantial evidence in the record. The decision of the Commissioner is therefore **AFFIRMED**.

SO ORDERED: 9/16/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication